UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE STREET PHOTO & VIDEO, LLC,<br><br>　　　　　Defendant. | Case No. 16-cv-02698-MEJ<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Dkt. No. 32 |

## INTRODUCTION

Jane Doe ("Plaintiff") engaged the services of George Street Photo & Video, LLC ("Defendant") to document her October 2013 wedding. The videographer Defendant assigned to record Plaintiff's wedding filmed a highly embarrassing interaction between Plaintiff and her new husband, then uploaded the recording to YouTube, where it was viewed millions of times and republished on multiple websites. Plaintiff filed this action, asserting the unauthorized publishing of her video violated her right to privacy, as well as a number of California and federal statutes. *See* First Am. Compl. ("FAC"), Dkt. No. 13.

Pending before the Court is Defendant's Motion to Compel Arbitration. *See* Mot., Dkt. No. 29. Plaintiff filed an Opposition (Dkt. No. 32); Defendant filed a Reply (Dkt. No. 37). All parties have consented to the jurisdiction of this Court. *See* Dkt. Nos. 9, 22. The Court heard oral argument on December 8, 2016. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **STAYS** the action pending resolution of the arbitration for the following reasons.

## BACKGROUND

Plaintiff "conducted an extensive amount of research on the wedding photography and videography market." FAC ¶ 31. She reviewed Defendant's website and conducted "research

regarding a range of local, self-employed photographers and videographers." *Id*. ¶¶ 32-33, 37. She interacted with Defendant's personnel regarding their services. *Id*. ¶ 34. Based on her research, she decided to engage Defendant to commemorate her October 2013 wedding. *See id*. ¶¶ 35-36.

On January 27, 2013, Plaintiff met with Stacy Pate, one of Defendant's sales consultants. *See* Decl. of J. Doe ("Doe Decl.") ¶ 3, Dkt. No. 33; Decl. of M. McMahon ("McMahon Decl.") ¶ 6. Plaintiff and her husband met Pate at a busy coffee shop. Doe Decl. ¶ 3. Pate showed Plaintiff photographs taken by three photographers, but would not let Plaintiff select a photographer/videographer for her wedding until Plaintiff signed a contract engaging Defendant. *Id*. ¶ 4. Pate advised Plaintiff to sign the contract as soon as possible. *Id*. Plaintiff did not review the contract before the meeting, and during the meeting, she only reviewed the contract on Pate's tablet computer. *Id*. ¶ 5. Pate "essentially sat in silence" while Plaintiff reviewed the contract "rather quickly." *Id*. ¶¶ 7-8. Plaintiff asked Pate to explain some of the contract terms at the time, but did not ask her whether changes could be made to the contract. *Id*. ¶ 10. Pate did not ask Plaintiff whether she wanted to make any changes, or suggest changes could be made. *Id*. Plaintiff was "somewhat intimidated by the process" of hiring professional service providers for her wedding. *Id*. ¶ 6. She felt other customers were watching her and listening to her conversation; she felt nervous and pressured to "get through it" and did not read the contract thoroughly. *Id*. ¶¶ 6-8.

Plaintiff signed the contract with Defendant during her meeting with Pate. *See* McMahon Decl., Ex. A ("Contract"), Dkt. No. 30-1. The Contract provides that,

> If the Client breaches this Contract . . . the Client shall be required to reimburse [Defendant's] costs and reasonable attorneys' fees incurred in the enforcement of this Contract.

Contract ¶ 27. In addition, except for suits by Defendant to collect payment for services rendered,

> any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration before one arbitrator in the City of Chicago, Illinois. At the option of the first [party] to commence an arbitration, the

United States District Court
Northern District of California

> arbitration shall be administered by the American Arbitration Association pursuant to its rules and procedures. The prevailing party shall be awarded all of the filing fees and related administrative costs. . . This Contract shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to its conflict of laws provision....

*Id*. For the sake of clarity, the Court refers to this paragraph generally as the "Arbitration Clause"; to the portion of the paragraph requiring the client to reimburse Defendant for the fees and costs incurred in the enforcement of the Contract as the "Fee Shifting Clause"; to the portion delegating the determination of the scope or applicability of the Arbitration Clause to the arbitrator as the "Delegation Clause"; to the portion of the paragraph providing for the award of filing fees and related administrative costs to the prevailing party as the "Prevailing Party Clause"; and to the portion of the paragraph regarding the application of Illinois law as the "Choice of Law Clause." The Arbitration Clause also provides that any attorneys' fees and costs incurred in *enforcing* an arbitration award will be added to, and become part of, the amount due under the Contract. *Id*. Plaintiff initialed each page of the 8-page Contract, and signed the Contract just below the Arbitration Clause. *See id*. Plaintiff described the Contract as containing "legalese" and presumes she saw the Arbitration Clause, but would not have been able to make sense of it. Doe Decl. ¶ 9.

Plaintiff is a California resident. FAC ¶ 1. Defendant is an Illinois limited liability company and its principal office is located in Illinois. *Id*. ¶ 2; *see also* McMahon Decl. ¶ 4. Plaintiff filed her Complaint in this Court, invoking both the Court's original jurisdiction over the subject matter because the action arises out of Defendant's violations of the Lanham Act, 15 U.S.C. § 1125(a) (FAC ¶ 7), and diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000 (*id*. ¶ 9).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Defendant operates its business from Illinois, and conducts that business in more than twenty states. McMahon Decl. ¶ 4. Defendant avers, and Plaintiff does not dispute, that the Contract involves interstate commerce and that the FAA applies to these proceedings. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted).

Under the FAA, the Court's role in evaluating a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[1]  If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, a court may stay the action pending arbitration.  *Id*. § 3.

## DISCUSSION

Defendant seeks to enforce the Arbitration Clause of the Contract, while Plaintiff argues the Arbitration Clause is procedurally and substantively unconscionable, and therefore unenforceable.  Because Plaintiff does not dispute Defendant's contention that the Arbitration Clause encompasses the claims in the FAC, the central question is whether the Arbitration Clause is enforceable.  In order to answer this question, the Court first must determine which substantive law applies.

**A.    Choice of Law**

The parties disagree whether Illinois or California law applies to this dispute.  Plaintiff urges the Court to apply California law, while Defendant urges the Court to respect the Choice of Law Clause, which requires the Contract to "be governed by and construed in accordance with the laws of the State of Illinois[.]"  Contract ¶ 27.

Plaintiff has invoked the Court's jurisdiction based on both the existence of a federal question and the diversity of citizenship between the parties.  The general rule is that a federal

---

[1] Here, Defendant argues—and by failing to respond, Plaintiff appears to concede—that the Contract encompasses the claims asserted in the Complaint.

4

court sitting in diversity applies the conflict-of-law rules of the state in which it sits, but where jurisdiction is based on a federal question, federal common law applies to the choice-of-law determination. *See Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194 (N.D. Cal. 2012) (citing *Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 782 (9th Cir. 1991) and *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). In this instance, the choice-of-law analysis is the same under federal common law and California law. "Federal common law follows the approach of the Restatement (Second) of Conflict of Laws [(the "Restatement")]." *Daugherty*, 847 F. Supp. 2d at 1194 (citing *Huynh*, 465 F.3d at 997). As to California, it "has two different analyses for selecting which law should" apply; where there is no advance agreement between the parties regarding applicable law, California courts apply the three-step governmental interest test, "analyz[ing] the governmental interests of the various jurisdictions involved to select the appropriate law." *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal.4th 906, 914 (2001). But where, as here, the parties have entered into an agreement containing a choice of law provision, California courts also follow the Restatement. *See id.; see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992) ("In determining the enforceability of arm's-length contractual choice of law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of" contractual choice of law provisions); *see also Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014) (when courts determine whether an arbitration agreement is valid, "[u]nder California law, the parties' choice of law will govern unless section 187(2) of the [Restatement] dictates a different result").

Plaintiff's reliance on *Tompkins v. 23andMe, In*c., 2016 WL 6072192, at *4 (9th Cir. Aug. 23, 2016, as amended Oct. 13, 2016) is misplaced. *See* Opp'n at 7. Contrary to Plaintiff's argument, *Tompkins* does not stand for the proposition that "[a] California federal court deciding whether to enforce an arbitration provision that has been challenged on unconscionability grounds 'must first determine whether California has a generally applicable unconscionability doctrine that would make the arbitration provision invalid.'" Opp'n at 7 (quoting *Tompkins*, 2016 WL 4437615, at *4). In *Tompkins*, the Ninth Circuit was not faced with the threshold choice of law

question at issue before this Court. The arbitration agreement *Tompkins* contained a California choice of law clause, and was construed by a district court sitting in diversity in California and accordingly applying California law to the dispute. There was no reason for the district court (or the Ninth Circuit) to apply any law other than California law. Where, as here, a Court must first determine which law applies in construing a consumer contract, the California Supreme Court and the Ninth Circuit are in agreement: courts must evaluate the choice-of-law question under the Restatement. The two other cases Plaintiff relies upon, *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227 (2015) and *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138 (2012), do not compel a different result. *See* Opp'n at 7-8. Because the undersigned "is actually evaluating the validity of the choice-of-law provision under California's framework and determining whether a fundamental conflict exists," the concerns articulated in *Pinela* regarding the delegation of choice of law and enforceability issues to the arbitrator are not implicated. *See Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1084 (N.D. Cal. 2015) (rejecting plaintiff's argument California unconscionability law required application of California rather than Texas law because plaintiff had failed to show arbitration clause violated a fundamental policy of California).

Restatement Section 187 provides that the

> law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2) (2016). Under the Restatement approach, the Court first must determine "either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. . . ." *Nedlloyd Lines*, 3 Cal. 4th at 466 (restating Section 187(2)). Here, the parties chose the law of Illinois. *See* Contract ¶ 27. Illinois has a substantial relationship to Defendant, given that it is the state where it is registered and has its principal place of business. *See Nedlloyd Lines*, 3 Cal. 4th at

467 (a "substantial relationship" exists where one party is domiciled in the chosen state).

Because the first prong of *Nedlloyd* is met, the Court must ask whether the application of Illinois law concerning unconscionability would be contrary to a fundamental policy of California. *See id*. Plaintiff has not demonstrated that the law of Illinois regarding unconscionability would be contrary to a fundamental policy of California. *See* Opp'n at 7-8 (noting in footnote that Defendant's analysis shows that "Illinois' unconscionability test is materially different from California's" but failing to argue Illinois' law is *contrary* to a *fundamental policy* of California); *cf*. at 8 ("In this case, the choice of law hardly matters"). The differences between Illinois and California law regarding unconscionability indeed are "material." *See Castaldi v. Signature Retail Servs., Inc*., 2016 WL 74640, at *6 (N.D. Cal. Jan. 7, 2016) (finding material differences, chief among them that Illinois law did not necessarily void contracts of adhesion, while under California law, such contracts "essentially" called for a finding of procedural unconscionability); *see also Loewen v. Lyft, Inc*., 129 F. Supp. 3d 945, 965 (N.D. Cal. 2015) (contract of adhesion is inherently unconscionable under California law, "but the degree of procedural unconscionability is low"). But even if the laws of California and Illinois are materially different and the law of Illinois might be less favorable to Plaintiff, this "is not a valid reason to apply California law." *Meadows*, 144 F. Supp. 3d at 1084 (citing *Han v. Samsung Telecomms. Am., LLC*, 2013 WL 7158044, at *7 (C.D. Cal. Dec. 16, 2013) ("rejecting Plaintiffs' argument that California unconscionability law should apply 'because it produces a more favorable result than that of the Agreement's chosen forum'") and Restatement § 187 cmt. g ("A forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.")).

During the December 8, 2016 hearing, Plaintiff argued that enforcing the arbitration clause would violate California's fundamental policy of protecting California citizens from unconscionable contracts. But this argument puts the proverbial cart before the horse: the Court has not found the arbitration clause unconscionable. Because there is no indication the Arbitration Clause violates a fundamental policy of California, the Court will analyze the enforceability of the Arbitration Clause in accordance with the parties' choice of Illinois law.

7

**B.     Unconscionability**

Under Illinois law, a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of the two. *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006) (citation omitted).

1.     Procedural Unconscionability[2]

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor*, 854 N.E.2d at 622. "Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014) (cert. denied) (quoting *Phoenix Ins. Co v. Rosen.,* 949 N.E.2d 639, 647 (Ill. 2011)); *see also Montgomery v. Corinthian Colls., Inc.*, 2011 WL 1118942, at *3 (N.D. Ill. Mar. 25, 2011) ("Illinois courts consider: (1) the manner in which the contract was formed; (2) whether each party had a reasonable chance to understand the contract; (3) whether key terms were 'hidden in a maze of fine print'" (quoting *Frank's Maint. & Eng'g*, 408 N.E. 2d 403, 410 (Ill. App. 1980))).

Based on Plaintiff's declaration and the Court's review of the Contract, none of these circumstances are present here. Plaintiff avers in her Declaration she read the Contract, that Pate did not say anything to her while she reviewed the document, and that she asked Pate several questions about the Contract terms. *See* Doe Decl. ¶¶ 7-10. The Arbitration Clause is not difficult to find or read: it is of the same size and font as the remainder of the Contract, and it is not hidden in a maze of fine print. *See* Contract; *id*. ¶ 27. Plaintiff initialed each page of the Contract and signed it on the page that displays the Arbitration Clause. *See id*. Plaintiff describes a busy coffee

---

[2] Plaintiff argued at the hearing that Illinois law only considers provisions procedurally unconscionable based on size of type font and location of the terms in the contract. That is inaccurate. Much like California, Illinois looks at many factors, including "all the circumstances surrounding the formation of the contract." *Jackson*, 764 F.3d at 777-78 (applying Illinois law).

8

shop and avers she rushed through the process of reviewing the Contract because she felt uncomfortable, but she does not indicate Pate was the cause of her discomfort, nor does she suggest Pate pressured her to rush through the document or to sign the Contract at the meeting. Pate did encourage Plaintiff to sign the Contract "as soon as possible" so that she could select a photographer, but did not threaten Plaintiff with any adverse consequences if she failed to do so; she also did not offer Plaintiff any incentives for signing the Contract immediately. Plaintiff avers that she only read the Contract quickly, noticed it contained "legalese" and that if she reviewed the Arbitration Clause, she did not understand it. Plaintiff's failure to see or understand the Arbitration Clause does not establish procedural unconscionability. "[U]nder Illinois law, 'a party to a contract is charged with knowledge of an assent to a signed agreement.' . . . [Plaintiff] signed both agreements, and thus is deemed to have knowingly assented to their terms, including the arbitration provisions." *Henderson v. U.S. Patent Commission, Ltd*., 2015 WL 6791396, at *4 (N.D. Ill. Nov. 2, 2015) (citations omitted); *see also Montgomery*, 2011 WL 1118942, at *4 ("Defendants' employees had no obligation to explain the arbitration provisions to Plaintiffs, and even if Plaintiffs did not read the provisions, they still can be bound by them" (citing *Hill v. Gateway 2000, Inc*., 105 F.3d 1147, 1149 (7th Cir. 1997) ("[O]ral recitation [of contract terms] would not avoid customers' assertions (whether true or feigned) that the clerk did not read term X to them, or that they did not remember or understand it. . . . Competent adults are bound by such documents, read or unread."))); *The N. Trust Co. v. VIII S. Mich. Assocs*., 657 N.E.2d 1095, 1103 (Ill. App. 1995) ("A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed its contract") (citation omitted).

Even if the Contract was one of adhesion[3] and Plaintiff had no opportunity to modify its terms, "those factors alone would not establish procedural unconscionability" because the Arbitration Clause was "not hidden, but rather [was] presented in type of the same color and size as the rest of the agreement." *Henderson*, 2015 WL 6791396, at *4 (applying Illinois law). Further,

---

[3] The parties dispute whether Plaintiff could make modifications to the Contract, and thus whether the Contract was one of adhesion.

> Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so-called 'take-it-or-leave-it' deal [unless] "the conduct of the party obtaining the advantage . . . is tainted with some degree of fraud or wrongdoing [by the advantaged party]. . . . [T]he mere fact that a person enters into a contract as a result of the pressure of business circumstances . . . is not sufficient."

*Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (quoting *Kewanee Prod. Credit Ass'n v. G. Larson & Sons Farms*, 496 N.E.2d 531, 534 (Ill. App. 1986)); *see also Metro East Ctr. for Conditioning & Health v. Quest Comms. Int'l, Inc.*, 294 F.3d 924, 928-29 (7th Cir. 2002) ("Arbitration often comes with the territory, so to speak—for example, with a job or with membership in the [NASD]. . . Although these agreements may be non-negotiable . . . they remain 'agreements' because the person could have chosen to do something else. . . ."). Plaintiff argues she was required to sign the contract before selecting a photographer, but the fact Plaintiff was eager to select a photographer for her wedding 9.5 months away does not constitute fraud or wrongdoing by Defendant.

Plaintiff also argues the Arbitration Clause is procedurally unconscionable because it fails to attach the American Arbitration Association ("AAA") Rules, and allows Defendant to forego the AAA rules in favor of another, unidentified, single arbitrator. *See* Opp'n at 12. First, "that the Arbitration Agreement is a contract of adhesion that incorporated by reference AAA rules that were not included in the agreement itself results in a degree of procedural unconscionability that is not sufficient to render the agreement unenforceable, 'but it is a factor to be considered in combination with' the conclusions on the question of substantive unconscionability." *Castaldi*, 2016 WL 74640, at *11 (applying government interest test rather than Restatement (Second) of Conflict standard because choice of law clause in consumer contract only pertained to claims to be brought; agreement did not state Illinois law would govern the contract itself; citations to Illinois law omitted). The second point is compelling, but the Court finds this is more properly addressed as a substantive unconscionability issue than a procedural one. While the Court finds this provision is not sufficiently procedurally unconscionable to render the Arbitration Clause unenforceable, but it will consider this aspect of the Arbitration Clause in assessing substantive unconscionability.

2. <u>Substantive Unconscionability</u>

"Substantive unconsionability occurs when terms are inordinately one-sided in one party's favor. [This ] 'concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.'" *Fuqua v. SVOX AG*, 13 N.E.3d 68, 80 (Ill. App. 2014) (citing *Razor*, 854 N.E.2d at 622-23; quoting *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006)). Illinois courts have found substantive unconscionability where contract "terms [are] so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267 (citation omitted). Plaintiff contends several aspects of the Arbitration Clause are substantively unconscionable.

   *i. Single Arbitrator in Chicago and Costs of Arbitration in Chicago*

The Contract only allows the first party to commence arbitration to choose the AAA in lieu of bringing the dispute to "one arbitrator in the City of Chicago, Illinois." Contract ¶ 27. At the hearing, Defendant argued it would be considered the first to arbitrate, and thus would be entitled to decide whether to select AAA or proceed with the "single arbitrator" option.

Plaintiff argues the provision allowing the first party to arbitrate to pick a single arbitrator rather than AAA is an unfair surprise. Opp'n at 12 ("It's hard to imagine a greater 'surprise' than coming to realize that the reputable arbitration provider whose rules you had reviewed would have nothing to do with the arbitration."). The single arbitrator option is the first option listed in the Arbitration Clause, it is clearly stated, and it is not hidden; at the option of the party commencing arbitration, the party may select AAA instead.[4] The Court therefore cannot find the availability of that option constitutes an unfair surprise. But the selection of a single arbitrator from an unknown organization, following as-of-yet-unidentified rules, could very well be unconscionable. *See, e.g., Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x 692, 694 (9th Cir. 2013) ("A single arbitrator unilaterally selected by a contracting party adverse to the other party is presumed to be biased")

---

[4] Moreover, Plaintiff contends she did not understand the arbitration provision at all. She therefore has not argued, nor could she show, that she relied on the availability of AAA arbitration and was unfairly surprised by the existence of another option.

11

(citation omitted); *see also Kemph v. Reddam*, 2015 WL 1510797, at *5 (N.D. Ill. Mar. 27, 2015) (an agreement to arbitrate in a forum that has no experience with arbitration, did not have any trained or experienced arbitrators, did not have any consumer dispute rules, and did not authorize arbitration under its laws was illusory, unreasonable, and unconscionable; an agreement to arbitrate with AAA or JAMS pursuant to that organization's consumer dispute rules provides the possibility for an unbiased and fair resolution process). The Contract does not mandate the application of AAA rules, nor does it require the opposing party to consent to the choice of the single arbitrator in Chicago. Defendant argues it is the first party to arbitrate, and thus it will have the option to select the arbitrator, and the rules to be applied at the arbitration. Defendant's selection may create an unconscionable condition, or may not. The Court finds this is the type of contract term that is "so one-sided as to oppress . . . an innocent party" that Illinois courts have found to be unenforceable. *See Kinkel*, 857 N.E.2d at 267 (citation omitted).

To the extent Plaintiff argues in the abstract that the administrative costs of arbitration are such that they render the Arbitration Clause unconscionable, there is no evidence in the record regarding the fees and costs involved.

Plaintiff also argues being required to travel to Chicago for arbitration, and to pay her lawyer to do so as well, renders the Arbitration Clause substantively unconscionable. She declares the costs of attending arbitration proceedings in Chicago would expose her to economic hardship. *See* Doe Decl. ¶¶ 11-12. "Applying Illinois law, courts have found forum selection clauses unconscionable where they impose costs that would preclude the plaintiff from bringing claims. . . . In other words, this is another iteration of the argument that the costs of arbitration would be prohibitively expensive, requiring specific evidence of the increase in costs." *Castaldi*, 2016 WL 74640, at *13 (citations to Illinois law omitted; internal quotation marks omitted). Plaintiff lives in Marin County, and her lawyer practices in San Francisco; they could travel to this Court easily and inexpensively; traveling to Chicago would require significantly greater time and expense (e.g., airfare, hotel, etc.). But Plaintiff has not cited to any case law establishing that this type of expense is, in and of itself, unconscionable.

*ii.     Carve Out for Claims Collection*

The Arbitration Clause allows both parties to the Contract to arbitrate all claims, but carves out an exception allowing Defendant to file suit to collect payments due under the Contract. *See* Contract ¶ 27. Plaintiff argues this is unconscionable. *See* Opp'n at 15-16. Under Illinois law, this is not the case. *Design Benefits Plans, Inc. v. Enright,* 940 F. Supp. 200 (N.D. Ill. 1996), is instructive. Applying Illinois law, the *Design Benefits* court found the existence of carve outs that allowed the plaintiff to enforce certain rights in court did not render a mediation/arbitration agreement "illusory". *Id*. at 204. The court noted that Illinois followed the Restatement (Second) of Contracts on the issue of mutuality of obligation. *Id*. at 205. Based on the Restatement (Second) of Contracts, the *Design Benefits* court opined that "the Illinois Supreme Court . . . would not find an arbitration clause, which compels one party to submit all disputes to arbitration but allows the other party the choice of pursuing arbitration or litigation, to be invalid for lack of mutuality of obligation or remedy where the contract as a whole is otherwise supported by consideration on both sides." *Id*. at 205; *see also Molton, Allen & Williams, LLC v. Continental Cas. Ins. Co*., 2010 WL 780353, at *6 (N.D. Ill. Mar. 3, 2010) ("[P]ursuant to controlling Illinois law, because the Agreement is supported by consideration, mutuality of the arbitration provision is not required and the arbitration provision is enforceable") (citing *Design Benefits*, 940 F. Supp. at 205); *Carter v. SSC Odin Operating Co*., 976 N.E.2d 344, 350-53 (Ill. 2012) (where a "promise to arbitrate, even if not met with reciprocal promise to arbitrate by defendant, is nonetheless supported by consideration . . . the arbitration agreements are enforceable"); *cf. Tompkins*, 2016 WL 6072192 at *10-11 (affirming district court's order compelling arbitration under California law even though arbitration clause contained carve out for intellectual property disputes; the carve out did not "on its face, obviously favor the drafting party" because both sides could bring intellectual property claims to court). Here, the Contract was supported by consideration from Plaintiff, who paid for services rendered, and from Defendant, who provided videography services on Plaintiff's wedding date; moreover, both parties provided consideration for the Arbitration Clause itself by agreeing to arbitrate the vast majority of claims. The Court accordingly concludes the carve out is not unconscionable.

13

### iii. *Fee Shifting and Prevailing Party Clauses*

The Fee Shifting Clause requires any client, such as Plaintiff, to reimburse Defendant the reasonable attorneys' fees and costs incurred in the enforcement of the Contract; it does not impose on Defendant the same obligation to reimburse a client suing for breach of the Contract. Contract ¶ 27. The Prevailing Party Clause provides that the prevailing party shall recover all of the "filing fees and related administrative costs" of the arbitration. *Id*. Plaintiff declares that it is her understanding that if she lost the arbitration, "I could be responsible for paying [Defendant's] costs and perhaps its attorneys' fees. I am told those fees and costs could run well into the six figures." Doe Decl. ¶ 13. Plaintiff's understanding is only partially correct. While fees, including reasonable attorneys' fees are recoverable to the prevailing party, only those fees and costs incurred in *enforcing* an arbitration award are recoverable—the Arbitration Clause does not provide for the award of attorneys' fees to the party prevailing in the arbitration itself. *Id*. Plaintiff argues these clauses are unconscionable because (1) the Fee Shifting Clause is not mutual; and (2) the "draconian" bilateral Prevailing Party provision amounts to a waiver of her rights under the fee-shifting provision of the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780.

The Fee Shifting Clause is, by the plain reading of the Contract, "one-sided", but applies only when Defendant files suit to enforce the Contract—the Fee Shifting Clause therefore is not at issue in the present action. Moreover, Plaintiff cites no law supporting her argument that it is so one-sided as to be unconscionable under Illinois law. Unlike the Fee Shifting Clause, the Prevailing Party Clause is not one-sided in Defendant's favor; it provides for the party prevailing at arbitration to recover "the filing fees and related administrative costs." Contract ¶ 27. There is no evidence before the Court of the filing fees and administrative costs involved here. And contrary to Plaintiff's apparent position, the Prevailing Party Clause does not provide for the recovery of *attorneys' fees* and costs to the party prevailing *in the arbitration*; it only provides for the recovery of such fees incurred in the enforcement of an arbitration award. *Id*. As such, the Prevailing Party Clause has the potential to benefit Plaintiff as much as Defendant; if Plaintiff prevails in arbitration and must bring a court-action to enforce the award, she will be entitled to

14

collect the attorneys' fees and costs she incurred in doing so, where she might not otherwise have any avenue guaranteeing such recovery.

Plaintiff also argues the Prevailing Party Clause amounts to an unlawful waiver of her rights under the California Consumer Legal Remedies Act, which allows prevailing plaintiffs to recover attorneys' fees and only allows Defendant to recover attorneys' fees if Plaintiff brought the action in bad faith. *See* Cal. Civ. Code §§ 1780(e), 1782. But even if based on the application of Illinois law Plaintiff cannot bring a consumer fraud claim under California law, she can bring one under the Illinois' Consumer Fraud Act ("ICFA"). *See* 815 ILCS § 505/10a. The ICFA also provides for the recovery of attorneys' fees and costs to prevailing plaintiffs in consumer fraud claims. *See* 815 ILCS § 505/10a(c); *see also Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 283 (Ill. App. 2009) (plaintiff prevailing on ICFA claim entitled to recover fees under Act not only for work performed on statutory fraud claim, but for work done on all claims that were "inextricably intertwined"). Although the ICFA does not articulate a different standard for the recovery of fees for prevailing plaintiffs and defendants, the Illinois Supreme Court has read a "bad faith" limitation into the ICFA when a prevailing defendant seeks to recover fees:

> Limiting a consumer fraud defendant's ability to recover fees to instances where the plaintiff acted in bad faith is consistent with the purposes of the Act. If this limitation did not exist, a prevailing defendant could be awarded fees simply because the plaintiff, although having a legitimate claim and proceeding in good faith, lost at trial on the proofs. The potential for such a penalty would act as a deterrent to the filing of valid consumer fraud claims.... Our duty, of course, is to avoid a construction that would defeat the statute's purpose or yield absurd or unjust results.

*Krautsack v. Anderson*, 861 N.E.2d 633, 644-646 (Ill. 2006) (citations omitted). Plaintiff thus is not "unlawfully waiving" any right to recover fees should she prevail on a consumer fraud claim, nor is she exposed to a greater risk of having fees imposed upon her if Defendant prevails than she would be under California law.

   *iv. Delegation Clause*

The Delegation Clause delegates to the arbitrator the ability to determine the validity of, and "the determination of the scope or applicability of" the Arbitration Clause. Contract ¶ 27. Plaintiff argues the Delegation Clause is unenforceable because (1) its language is not clear and

15

unmistakable, and (2) it is revocable under state contract defenses to enforcement. *See* Opp'n at 17-19. The Court need not address this argument because it is evaluating the enforceability of the Arbitration Clause based on California's choice-of-law rules. *See Meadows*, 144 F. Supp. 3d at 1084 (distinguishing *Pinela*, 238 Cal. App. 4th at 239-40, on this ground).

    *v.*    *Severability Clause*

The Contract provides that if "any provision" is "declared invalid or unenforceable by a court of competent jurisdiction, such provision ... shall be amended and interpreted to accomplish the objects of such provision to the fullest extent possible under applicable law and all other provisions and terms shall remain valid and binding." Contract ¶ 28. As Defendant recognizes, the Court can sever unconscionable provisions in the Contract without rendering the Contract, or the Arbitration Clause, invalid. Mot. at 12; *see Kinkel*, 857 N.E.2d at 276 (court may sever unenforceable portion of agreement and enforce remainder if the stricken portion "is not essential to the bargain," but "an entire contract or a clause therein fails if the stricken portion constitutes an essential term of the contract or clause."). Having found the provision allowing arbitration before a single, un-identified arbitrator could very well be unenforceable and unconscionable; the Court exercises its authority to sever that portion of the Arbitration Clause. Neither party has agreed the identity of the arbitrator is not an integral part of the Arbitration Clause. Because the Arbitration Clause contemplates multiple acceptable arbitral fora, the undersigned finds the portion of the Arbitration Clause providing for arbitration before a single arbitrator in Chicago is not an integral part of the Arbitration Clause, and is severable. *See also Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 790-93 (7th Cir. 2013) (agreeing with Circuits that have found identity of forum as arbitrator "not integral" to arbitration agreements, and therefore not unenforceable, as a matter of federal common law; remanding with directions for district judge to appoints arbitrator pursuant to procedures selected in contract).

    3.    <u>Conclusion</u>

At this juncture, the Court finds no reason to conclude the Arbitration Clause as a whole is unconscionable under Illinois law. Having severed the portion of the Contract that would allow the parties to proceed before a single, un-identified arbitrator using un-identified rules, the Court

**grants** the Motion to Compel Arbitration "administered by the American Arbitration Association pursuant to its rules and procedures" in Chicago.

### C. Staying

"To give effect to the federal policy favoring private arbitration, the FAA provides stays of litigation when an issue presented in the case is referable to arbitration." *Tinder v. Pinkerton Sec.*, 305 F.2d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 3). The Court accordingly **stays** the action pending resolution of the arbitration proceedings.

The parties shall file a joint two-page status report informing the Court as soon as any of the following occur: (1) their request to arbitrate is rejected by the AAA, or (2) the parties have resolved their dispute through arbitration.

**IT IS SO ORDERED.**

Dated: December 19, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge